Madam Clerk, please call the last case of the morning. 315-0423, John Massinger v. Tookie Express Inc. You may proceed. Thank you. May it please the Court, Counsel? If I might be so bold, I think that if ever a case cried out for a reversal and a reinstatement, this is the one. This case was actually settled back on June 24th, 2008. And you have a settlement contract that you can show us? There was never a settlement contract that was... Executed? Then how was it settled? Excuse me? There was never a settlement contract presented to the Commission, correct? That is correct. No one ever signed a settlement contract? Well, there was no settlement contract that all the parties signed. Okay, so then how was the case settled? We, when we were in the hearing room at the Will County Courthouse in Joliet on June 24th, getting ready, about ready to go to trial, the respondent's attorney at that time, Dana Brisbane, said, We agree to the settlement that you proposed, which was $100,000 plus payment of the bills from Oak Park Hospital and Midwest Orthopedics. And he confirmed that settlement by an email, which is part of the record, and I attached it to my brief. But I never, despite what I would consider Herculean attempts, was ever able to get the respondent to provide me with a proper settlement contract or to sign the settlement contract that I sent them. And I even filed motions before, by that time, Arbitrator Falcioni to try to enforce the settlement agreement. In fact, that was in July of 2009. The respondent didn't show up. He continued it over to September of 2009, a couple days before it was to be heard. My opponent sent me a settlement contract, but it was contrary, or not contrary, but it was not in accordance with the settlement agreement that had been agreed upon. They wanted to deduct what they claimed was an overpayment, but the agreement was for a full $100,000. Did they ever acknowledge that they had agreed to pay the money without the deduction for the overpayment, in writing, any time? Yes, that's in writing on this email that I attached to my brief. But who sent that email? The respondent's attorney at the time, Mr. Dana Brisbane, sent it to me. And what did he say? It says here, Mr. Lichten, regarding the death center case, I will plan to forward settlement contracts to you representing $104,793.40. The credit must be taken, $4,793.40. Therefore, the contract will pay $104,793.40 minus $4,793.40 credit, $100,000 owed to claimant and his attorney. Additionally, respondent will be responsible, or it doesn't say be, but will be responsible for two bills, Midwest Ortho and Rush Oak Hospital. The diagnostic imaging bill has been paid by respondent. And that was acceptable to you? Yes, that's what, that's right. And I tried my best to get them to send me a settlement contract, which reflected that. I never could get them to do it. Finally, after I filed a motion, and I made numerous phone calls, letters, you name it. Finally, I filed a motion to reinforce the settlement. And as I say, this was in July of 2009, respondent, nobody showed up. This was down in Joliet at the time. And finally, my opponent who's here today, Mr. Crow, sent me a settlement contract in early September. But it was for less than $100,000 if they deducted the $4,000 something. So I said, I can't, you know, this is not what we agreed upon. I sent, so I did my own settlement contract. I sent it to my opponent. They refused. They said, no, we don't have an agreement.  I couldn't get it enforced. Okay, so what did it have to do with, did anybody show up on October 4th, 2012, when it was set for October 19th? Yes, well, I have a clerk who goes to the docket calls. And I. It was set for trial then on October 19th, 2012, right? No, it was not set for trial. What was set was respondent's motion for Dennis. This was approximately their fifth motion for Dennis. That's what was set. I had planned to appear, but on October 17th, I had, I was notified that I had to appear on October 19th. I had an emergency hearing. I had, it was really a life and death kind of case because I had a client who had been injured fighting a fire. I was a volunteer fireman down in Danville. And they were going to cut off his benefits, cut off his oxygen. That's a really compelling reason. Did anybody show up on October 19th? On your side of the case? I'm a sole practitioner. I didn't, I couldn't show up. I notified the arbitrator by email. I notified Mike Bowen. I said I can be there on the 18th, but I can't be there on the 19th. I said I object to the motion for Dennis. And apparently from, I don't know, I wasn't there, but apparently the motion for Dennis was granted. But arbitrator Andrews also DWP'd the case, which I didn't. I mean, I had appeared probably a dozen times even after this case was settled. And I always had done everything that I thought was appropriate, including objecting to the respondent's motions for Dennis that were not in accordance with the rules. Counselor, bookmark where you're at in your argument, and you can come back to it. But I just wanted, before we get too far away from that email that you were reading from, what was the date of that email that set forth the terms of the settlement? June 30th, 2008. Okay. From Ms. Brisbane? Yes. Okay. It concludes, please respond immediately if this is acceptable. Yes. Did you respond? Yes, I did. And is that written document in the record? That's not in the record, no. But there are letters that I wrote, including the settlement contract that I sent to the respondent to try to get him to sign the settlement. Wait a minute. I think you're deflecting the question. If you're going to allege there was a meeting of the minds, just go back to your basic contract law. He sends you this. He asks you to respond to the offer in the email. You don't respond to his offer? You send out some other letters at some point? No, we had already agreed on the settlement on June 24th. I did respond. I called him. I said, yes, this is right. This is what we agreed upon. Send me the settlement contracts. You never responded, though, to the email in writing. You never responded in the writing that you sent. I don't recall if I responded in writing or not, as I stand here today. But there was no dispute. I mean, we agreed on the settlement on June 24th. There was never any dispute about this. I finally, as I said, gave, you know, filed a motion to enforce the settlement agreement. I'm sure I wrote him letters saying, you know, where's the settlement contract? Send me the settlement contract. I mean, there was never any dispute about this. This is what we agreed upon. So, anyway, after I finally couldn't get the settlement contract, then, okay, so can't get it enforced, I guess. So then they wanted to take Dr. Tulipan's deposition. I said, fine, file a motion for damages. They filed several motions for damages, actually five altogether. And if they didn't comply with the rules, I objected, and the arbitrator didn't grant their motion appropriately. And then it's the petitioner to be blamed for filing appropriate objections to motions for damages and having those objections honored by the arbitrator. I think I would be doing less than my job, especially under these circumstances, if I didn't. Well, when you filed the first motion, the first motion was turned down. Is that not correct? And the subpoena to enforce the settlement agreement. No, no. The first time you objected to the motion to take the deposition, that was, your objection was denied, was it not? No, it was granted. He didn't, the arbitrator did not, that was arbitrator at that time, arbitrator Falcioni. And then what happens? Ultimately, the deposition was set pursuant to order of the arbitrator, was it not? Yes, it was. And it wasn't taken, is that correct? That's correct. Because you couldn't attend. They wanted to reset the debt, and you said no. And so you filed the same objection again?  Wait a minute. It was continued because you asked to have it continued. Was it not the deposition? Well, I asked them not to proceed with it because for several reasons. One thing, I think the way that they got it sent was improper because when I had met with the attorney who they sent out to New Lenox in, I believe it was ending up being in July, I said these are the dates I can appear for the deposition. I would appreciate it. If you want to refile the motion, refile it for Geneva or New Lenox, not Ottawa. I'm going to be on vacation in August in Ottawa. So they filed it for Ottawa, and they filed it for a date that I couldn't do because I already had something else set then. And in addition to that, they called, their office called me and said, well, we screwed up. We forgot to notify the doctor that it was scheduled, and so we can't proceed, plus the fact that I couldn't be there anyway. And I think, you know, it was an agreement that I had with the young attorney who was there at the time in New Lenox that they wouldn't file something in Ottawa in August when I was on vacation anyway. So I think that was perfectly appropriate for me to take that position. I think it was perfectly appropriate for me to object to a deadness if I think it's not filed in compliance with the rules. And both arbitrator Falcioni and arbitrator Andros agreed with me I think four different times on that. And what was said on October 19th was the motion for deadness. So apparently it was granted from what was stated to the arbitrator. And then he DWP'd the case because I couldn't be there. That was the only time in the whole history of this case that I couldn't be there. So does that make any sense for a case to be dismissed? When do your records reflect that you received notice of the DWP? I'm sorry. When were you notified that the case was dismissed for warrant of prosecution on October the 19th? I couldn't tell you up hand, but I know that I filed a motion to reinstate timely. Well, you filed it in February of 2013. It was DWP'd in October of 2012. There's a 60-day limit, isn't there? Well, right, but the commission doesn't send things out. I mean, I didn't know it was DWP'd. I filed the motion within 60 days from the time I received it, which I'm thinking must have been in December or something like that. So a lot of times there's a big delay. A lot of times the commission doesn't even send out the notice. But in this case they did, and it was filed timely. There was no issue there. And I would point out also, I mean, the respondent back in March of 2012, Arbitrator Andrews told the respondent, refile your motion for deadness for April. He gave him specific instructions to do that. We agreed on a date that it could be heard, and guess what? They didn't do it. So the case got continued again over to July, and he gave him even more time to do it. I mean, the petitioner is being blamed for not advancing the case or whatever it might be. The petitioner was ready for trial in June of 2008. We're still ready for trial. The respondent had an opinion initially from Dr. Fernandez, who they initially sent the petitioner to, saying that the date provisions weren't related. They didn't like it, so they sent him to another doctor, Dr. Tulopan. I have a perfect right to object and require them to file a deadness and to comply with the rules. I shouldn't be blamed for that. The petitioner shouldn't be blamed for that, especially when we had an agreement on the settlement and they wouldn't comply with it. This case should be reinstated. It should go back to the arbitrator. He should be able to proceed. Thank you, counsel. Thank you. You have time to reply. Counsel, you may respond. Good morning, Mr. Justices. My name is Dan Crowe. I represent the respondent, Tiffany Express, in this case. I wish I was talking about the merits of this case, but we're not. We're talking about an attorney's behavior in this case, and I don't really feel good about that. I've had a very hard time getting ready for this hearing today. I don't enjoy raining on another attorney, but there was never a settlement at any time in this case. But what's this e-mail he was referring to? What happened was there's other e-mails there, too, because basically what we asked for is the medical bills. The medical bills were not produced. That's why he was pursuing the medical bills. We needed to know what medical bills were, and that's what ultimately caused this case to go into where we reached the impasse was because I took the case over. My client asked me to take the case over. They thought that a more senior attorney would be able to deal with counsel. So I took the case over in September of 2009. I immediately tried to get a hold of Mr. Lichten, and I tried to get this thing done. So I prepared contracts, and I sent them to him in 2009. He rejected the contracts. There was still the issue involved with the overpayment of TTD. So then I got the contracts back. He rejected them. He told me that. I talked to the client. The client told me, okay, fine, get rid of the case. We'll waive the overpayment. So I sent another. I amended the contracts. This is in 2009 now, at the end of 2009, November of 2009. I sent the contracts back to him, and he sent them back to me, except he completely amended them, and he added $36,000 in medical bills that we had never even seen. That had to do with a condition of decurveying syndrome. The petitioner in this case had injured his arm. I said, we're not going to pay that. My client said, we're not going to pay that. And at that point, we started to try to get the case ready for trial. The case was never set for trial. Counsel tells us that he's been there all the time, and he was always ready to go to trial. Yet, arbitrator Falcioni dismissed the case for wanted prosecution in November of 2009, and we made no objection to the reinstatement when he filed his reinstatement sometime in 2010. Now, then we started to try to move forward. Now, there was a couple of times when the denimus was before arbitrator Falcioni, but the commission was going through a reorganization at the time, and they said, well, that's arbitrator Andros' case. So it was withdrawn, and we went to arbitrator Andros. Now, as what I always do in situations like this, if you want a doctor's deposition, you've got to pay him about $2,500 to $3,000 to reserve the time. So given the history of this case, given the fact that there was multiple, multiple continuances, I left that blank. I thought, okay, you know what, I'm going to go out there, I'm going to say, okay, this is what we need, but you know what, let's agree to a date. I wanted him to have input on the date with his diary there. And he objects to it because I didn't put it in. All right, fine. I'm technically deficient. I admit it. Now, the arbitrator told us to go to April 12th, in April of 2012, as counsel just pointed out. Well, it's not in the record. But my mother died on April 2nd, 2012. The arbitrator was informed of this. All the attorneys were informed by this. And I'll admit to that. No, I'll say this, is that in April of 2012, all of my colleagues were understanding, and they gave me a pass for about 30 days. And then we got back to business. And that's basically what happened in April of 2012. As far as a conference with, nobody was representing this case other than me at that point. So in terms of counsel saying, don't set it for Ottawa or whatever, that's absurd. I never heard that before. I didn't hear it until I read the brief. Then, so what we did was, was that I knew the case was above the line. I mean, it was way above the line. I knew that we had to get something done. And so I filed for the dedimus in August of 2012 before Arbiter Andros when he sat in Ottawa. I went out there. Counsel didn't appear. And he granted the dedimus. Now, about two weeks before, September 26th, which was the date of Dr. Tulipan's deposition, I received a telephone call from Mr. Lichten. And Mr. Lichten told me, I can't make that date the 26th. Would you please continue the deposition? And I said, okay, sure. And then I said, but at the time, I'll give you some more dates before we set the deposition. So we call the doctor. We get some other dates. I try to get Mr. Lichten on the phone. And I don't get him on the phone until after September 26th. And he says to me, get another dedimus and hangs up. And I thought to myself at that time, you know, I've been doing this for a long time. Even though he had agreed to the date before? Well, he didn't agree to the date before. But it was set. But it was set by the arbitrator. And, you know, maybe I should say, well, I've got a court order here. But, you know, I'm taking the chance that the arbitrator is going to say, you can't change my orders. But I did anyway because that's how you get along in this business. And so I said, fine, sure, we'll continue it. And so then I tried to get a hold of him. I finally got a hold of him sometime around the 28th or the 29th of September of 2012. And that's when we had that phone call. I was stunned. That's never happened to me. No one has ever done that. I've been doing this for 38 years. That never happened to me. And I'll say this other, too. I've been doing this for 38 years. I've settled thousands of cases. I've tried hundreds. I've been arguing before commission panels scores of times. I've been here, you know, a handful of times. But I never once, ever objected to the reinstatement of a case. And it's happened to me dozens of times. Not until today. Because this is a case that the commission said is that. It's that. Calls for it because the arbitrator and the commission were frustrated because counsel would not allow the case to move forward. When the settlement broke down, and as it does a lot in this business, we're at an impasse. Okay, let's get it done. Let's try the case. Let's be courteous to each other. Let's show civility to each other. And let's get it done. And we tried. We really tried hard. Counsel, I want to ask you a question just in terms of the October 2012 date here. On October the 18th, there's an indication in the record that stating that the case had been, recognizing the case had been set on October the 19th, but said that he had to try a 19B case in Urbana, and indicating he wouldn't be available on October the 19th. In the motion to reinstate, the claimant's attorney inserted that in regards to October the 19th, Unfortunately, due to some sort of clerical error or miscommunication between the claimant's attorney and his clerk, the claimant's attorney understood that the case had once again been continued when, in fact, it had been given a hearing date, October 19, 2012. The claimant's attorney would have appeared before the arbitrator on that date had it not been for the mistaken communication or his oversight. Communicating in that motion to reconsider, or motion to reinstate, in essence, he didn't know about the October 19th date. Was that ever addressed in the motion to reinstate hearing? I believe that it was, because the thing about it is that the motion, the petition to reinstate, is full of fictions. When you read the motion, the petition to reinstate, it says the petitioner's counsel writes, like you just indicated, due to clerical error or miscommunication, but yet he wrote the email to the arbitrator the day before saying that the above case is set before you on October 19, 2012. So by that email, he totally, I mean, the petition that he wrote and he signed and he had filed was completely contradicted by the email that he sent to the arbitrator and me on October 18, 2012. What happened there on October 19, 2012 was the case was called, I appeared, the arbitrator asked for counsel, he was not there, and so he dismissed the case and went to prosecution. At that point, the case was 8 years old, well above the red line, and the Supreme Court in the Schiffer case was actually presented with the same issue in that case. The attorney said I had to be in a criminal court someplace else, but he said a secretary. And the court said, no, that was not good enough. You have an obligation to be there. You weren't there. It was dismissed for want of prosecution. So I think that this is a harsh remedy. I know that. I understand that. And I think this court certainly understands that. The commission did, too. This was not something that the arbitrator or the commission or, for that matter, Judge Anderson, I think, dealt with lightly. I think that they understand it. But at some point in time, the rules have to be enforced. And sometimes when those rules are enforced, the result is harsh. And this is a harsh result in this case. But I think that when you take a look at the Bromberg case, the Cranfield case, when you take a look at the Schiffer case, the Zimmerman case, this is right there with them. And the fact is that the settlement that he claims had taken place in 2008 never occurred. The law is clear. Our Supreme Court, in 1927, in the Zurich v. Industrial Commission, said no case is settled until the contract is approved. As a matter of fact, it even indicates anybody can change their mind before the case is approved for whatever reason. So that's a red herring, and the commission called it a red herring. Counsel was told many times when he brought his motions to compel that there was no such thing as a motion to compel the enforcement of a settlement at the commission. So we tried to get the thing done, and for two years we just hit a brick wall. And on October 19, 2012, the arbitrator's frustration grew to the point where he entered this order. The commission saw it. This is a manifest weight case. The commission saw the record. They saw the misstatements made by counsel in the petitions that he wrote, in the briefs that he presented. When you take a look at the record, I mean, him saying he was there all the time, ready for trial, yet the case was dismissed for warrant of prosecution in November of 2009. And it just doesn't square. And consequently, they made a judgment. They judged the credibility of the witnesses, which in this case was the counsel's, and they entered their decision accordingly. I do not believe the commission abused its discretion in this case. Judge Anderson certainly felt that the record supported the commission's decision, and I ask this body to affirm that Judge Anderson's order. Thank you very much. Thank you, counsel. Counsel, you may respond. I had a chance to check the record, and in response to your question, Justice Hudson, on page C000110 of the record is a letter that I wrote on July 2nd, 2008, in response to Attorney Brisbane's email of June 30th, 2008. And basically accepting the agreement, I'm enclosing, I enclosed a copy of all of the bills that were in issue, including the two big ones. Well, it says her email states two bills. So when you say all the bills, are the two of you on the same page then? I'm sorry, what? Are the two of you on the same page then in terms of what the settlement offer was or what the settlement was? Well, you know, there was one bill that he told me was already paid, and I think the others were their prescriptions and some stuff that my client had paid out of pocket, which they agreed to reimburse them for, which they did. So, in other words, this basically accepted their, I mean, we already accepted, we'd already agreed on the settlement. So this accepted it, and they already had all the bills, contrary to what my opponent just said. But this, I sent him another copy of all the bills, and it's in the record. And then I sent in... Mr. Lincoln, do you agree with what opposing counsel stated as far as what the law is, that there is no settlement until you have an approved settlement contract? That is what the case law says, isn't it? Well, apparently it is what it says, but I think... What are the differences any of this make then? There was never an approved settlement contract, so there was never an enforceable settlement, even if you agreed on all the terms. Well, I think the difference is that under these circumstances, and after all the, I would say, herculean efforts that I made to get the settlement consummated, I guess you could say, after we agreed upon it, and then, you know, I'm getting blamed for objecting to Denimis's motions for Denimis that were not in compliance with the rules, which I think is entirely appropriate because... Well, wait a minute. Let me just ask you one poignant question about that, and I want your honest, candid answer. He represented that the deposition, after it had been ordered, he received a phone call from you, and because of a conflict in your personal schedule, you asked if the deposition would be continued. Is that true or not? That's right. I told him I couldn't make it on that day. Okay. So as a courtesy to you, he continued it. And then he represented, is this true or not, that when he called you back, you basically told him to get another order. Told him to what? Get another order for the deposition. Well, I did tell him he should get a Denimis. Well, you know, counsel... Because I don't think the Denimis was done properly to begin with. Counsel, counsel, you called him up and said, I need you to continue this deposition because I've got to be somewhere else. What if he would have said no? What would you have done about that? Well, I guess then the deposition would have gone ahead, except for the fact that someone... So he gives you a break, continues the deposition, and when he wants courtesy in return, you turn around and say, go get yourself another Denimis. Well, except, remember, I told the court, and it's in the record, that I had an agreement with the associate that Mr. Crow sent out to New Lenox in July that they wouldn't file the Denimis in Ottawa and they wouldn't do it in August, and I gave them a bunch of dates when I could do the deposition. And they didn't honor that agreement. Yeah, but the point is it was ordered. It was ordered at that point. And he agreed to pick a new date as a courtesy to you. You can't dispute that, right? I don't dispute that, but I also think you should remember, somebody from his office called me and said that they had screwed up and they had failed to secure the date from the doctor. So they couldn't have even gone ahead anyway, assuming that what she told me was correct. And, you know, so, I mean, if this justifies dismissing the case, and, you know, the documentation is that I did accept, you know, it's all in writing. Mr. Crow says that he never had the bills. They had the bills before the trial. They had them on July 2, 2008. I wrote additional letters on September 26, 2008 and October 22, 2008. Can I ask you another question? Your opponent suggests that the excuse that you gave the commission as to why you didn't appear on October 19th was belied by your own e-mail to the arbitrator. Is that true? I apologize. I don't know what happened. My mind must have gone crazy because I definitely, I mean, that was incorrect. I completely forgot about it. But I definitely, and it's in the record that I had this trial in Urbana on the 19th, and it was a, as I say, life and death as far as I was concerned. My time was concerned situation. That's the only time that I never appeared on any of these dates. There were dozens of them. Plus, it was a motion for deadness that was set. It wasn't set for trial. Counselor, your time is up. I want to reply. Thank you, Your Honor. Thank you, Counsel. The arguments in this case will be taken under advisement and a written disposition shall issue. The court will stand and recess subject to call. Thank you, guys.